We will now move to the eighth case, Lamont Johnson v. Nancy Berryhill, case number 18-2087. And Mr. Schnaufer, we will begin with you. Good morning, Your Honors. May it please the Court, Eric Schnaufer for Appellant Lamont D. Johnson. There is one supportable conclusion. Mr. Johnson met all three requirements of Listing 1205C, one of the listed impairments for intellectual disability. There are three requirements for Listing 1205C. The Commissioner disputed only whether Mr. Johnson met Listing 1205C's first requirement. The first requirement is for deficits in adaptive functioning initially manifested during the developmental period, i.e., evidence demonstrates or supports an onset of the impairment before age 22. According to the agency and precedent, deficits in adaptive functioning are not a matter of common sense, but are a medical matter. Under the 2002 technical revisions to the Listing 1205, the Commissioner authorized the use of any of four medical definitions of mental retardation, including from the American Psychiatric Association, the well-known DSM. Mr. Johnson proved that he met the first requirement of Listing 1205C using the APA's definition. Significantly, the Commissioner did not dispute that Mr. Johnson met Listing 1205C's first requirement via the APA's first definition. The Commissioner did not deny that Mr. Johnson had deficits in adaptive functioning in at least two of 11 areas mentioned in the DSM, the DSM-IV, which is at issue in this case. The ALJ, in evaluating Mr. Johnson's deficits in adaptive functioning, failed to recognize that there were three medical opinions from agency sources that he in fact had the requisite deficits in adaptive functioning. In 2007, agency-examining psychologist Dr. Henry diagnosed mild mental retardation for the purpose of the DSM, which by definition carries with it an opinion that these deficits in adaptive functioning exist. In 2014, agency-examining psychologist Dr. Hankey diagnosed mild intellectual disability, which of course itself also carries necessarily an opinion that deficits in adaptive functioning existed. Dr. Johnson in fact reported, Dr. Hankey noted that Mr. Johnson reported decreased adaptive functioning in various areas. Thirdly, the ALJ did not recognize that testifying medical expert Dr. Brooks testified that Mr. Johnson, quote, would probably qualify under 1205 number 4, end quote, and that is an opinion that Mr. Johnson met listing 1205C's first requirement. Now, Dr. Brooks did say that Mr. Johnson did not meet or equal illicit impairment, but that is based upon Dr. Brooks' legal error. Dr. Brooks thought that an additional severe mental impairment was needed to meet the listings when in fact the listings require another severe impairment. And also later on, importantly, the judge himself found that Mr. Johnson had a separate physical impairment and also two separate severe mental impairments. And so correcting Dr. Brooks' testimony for his legal error about the requirements of 1205C, Dr. Brooks in fact provided testimony consistent with Mr. Johnson meeting listing 1205C. Mr. Schnaufer, can I ask you a question here about, doesn't our decision in NOVI turn the inquiry here into one about whether the petitioner here, your client, can just cope with the challenges of daily life? I don't think NOVI should be read as such. NOVI is a cursory decision alluding generally to the DSM's definition of intellectual disability deficit adaptive functioning. NOVI did not discuss the full definition where the emphasis is on adaptive deficits, not on adaptive strengths. NOVI, for example, didn't discuss that main focus. Also, NOVI did not discuss at least two of 11 criteria of the DSM for deficit adaptive functioning. In any case, this case, Mr. Johnson's case, is much stronger than NOVI. In this case, as I say, there's three opinions from agency sources that either expressly or impliedly say that he actually does have the deficit adaptive functioning. And if NOVI somehow endorses a Gestalt-like analysis of deficit adaptive functioning, I think it's contrary to, you know, this Court's precedent, for example, in Webster and also Supreme Court precedent regarding, you know, in the death penalty context where the deficits in adaptive functioning are a medical matter. They're not simply a matter for a, you know, the finder of fact to assess. A finder of fact evaluates medical opinions about whether or not the deficits exist as opposed to making a de novo determination, you know, on a vague standard that was, you know, from part of one of the publications as this Court did in NOVI. So, also in this case, there is, from the developmental period in 1992, when Mr. Johnson was about 11, that he had the requisite deficit adaptive functioning. There's a behavior scale, which is 56, so he's two standard deviations beneath the mean when he's, you know, when he's in the developmental period. And so, unlike in NOVI, there is, you know, conclusive, in our view, evidence that Mr. Johnson did have the deficit adaptive function during the initial, during the developmental period. So this is a much, much stronger case than NOVI. Also, in NOVI, the Court recognized that some people with intellectual disability are able to work and then said, well, because Mr. NOVI appeared to be able to work, then she didn't have intellectual disability. And that simply doesn't fall because, you know, under the DSM, many people with mild and even moderate intellectual disability are able to work. The agency determined through 1205C that someone with intellectual disability who gets that additional something, who has that additional severe impairment and also has the requisite IQ scores that are not issued in this case, is conclusively disabled under 1205C. So yes, people with mild intellectual disability can work, but the agency through 1205C said, those people who have an additional severe impairment are conclusively disabled. Now, the Commissioner relied on improper post hoc rationalizations that two non-examining state agency sources diagnosed borderline intellectual functioning. But even if the ALJ himself had cited those opinions, those opinions would not be substantial evidence for the ALJ's deficits finding. The two psychologists gave quote-unquote weight to the quote-unquote MMR diagnosis, I think, of Dr. Henke, and giving weight, it's irreconcilable to give weight to diagnoses of mild mental retardation and nonetheless diagnose borderline intellectual functioning. The ALJ otherwise erroneously evaluated the first requirement. The ALJ did not focus on deficits. The ALJ seemed to focus on strengths. But even there, the ALJ got it wrong. The ALJ mentioned that Mr. Johnson went shopping, but the ALJ didn't dispute that his mother said that he couldn't go shopping by himself because he couldn't handle money. And ALJ, a page earlier, recognized that Mr. Johnson needed assistance with shopping. Would you like to reserve the remainder of your time? Yes. Very good. Thank you. We'll now hear from Mr. Kneller. May it please the court, Andrew Kneller representing the agency. The agency has set forth the statute, or excuse me, Congress has set forth the statutory requirement to get disability. A claimant has to prove that he is unable to engage in any substantial gainful activity. That's what the statute requires. And the agency enacts regulations to enforce the statute. The regulations are not meant to circumvent the statute. They're supposed to enforce the statute. The requirement is if you can do work, you don't get disability. So the agency goes and enacts the listings. They have a higher standard. Appellant would turn that higher standard into a loophole. According to appellant, he gets disability even if he can do substantial gainful activity. Because he takes a rote reading of the listings without a look at the actual evidence showing what he can do. Functionality is what matters in a disability determination, what the claimant can actually do. In this case, we have uncontradicted medical expert testimony from the testifying psychologist that the claimant is able to do simple work with minimal interaction with others. The ALJ took those findings, that functional capacity, and then questioned the vocational expert and said, if someone has this functional capacity, is there work that this person can do? And the vocational expert said, yes, there is work. That's the standard for disability. What were examples of work he could do? The examples of work were dishwasher, I believe it was a housekeeping type job, and... Hospital cleaner. Hospital cleaner, thank you. The ALJ did his job here. Substantial evidence supports the entire opinion. The ALJ looked directly at deficits of adaptive functioning. There is no opinion in this record that the appellant has the requisite deficit in adaptive functioning to meet Listing 1205. There are opinions about medical diagnoses and deficits of adaptive functioning that might meet the medical diagnosis in the DSM, but there are no opinions that the requisite deficit of adaptive functioning is met for the listing. There's medical diagnosis, and then there's the listing. They're two different things, and they serve two very different purposes. The purpose of the listings is to ensure that someone who meets the high bar of disability doesn't have to go through the rest of the process. It's for expediency's sake. But even if there's an error in the listings, they still get to prove their case. The entire analysis goes through, and an ALJ is required to determine whether or not someone has the functional capacity to work and whether there's work available. Is that what's on the listing, the available work? Say that again, Your Honor, I'm sorry? The listing you referred to. Is that examples of available work? The listing is premised on the proposition that there would be no available work if someone met the listing. So it's a negative. Yes, yes. The listings show that you are so severely disabled that, quote, in terms of the regulation, there is not any gainful activity you can do, let alone substantial gainful activity. Give me a moment, Your Honor. Yes. The question comes down to who gets to weigh the evidence. And the answer to that question is undoubtedly the ALJ. The ALJ looked at the appellant's functioning, his daily activities, how he conducted himself in prison, how the prison personnel reviewed and viewed him, and most importantly, the fact that he was able to hold a job and earn near substantial gainful activity during that job. The ALJ took all that into consideration and weighed it and concluded that the deficit and adaptive functionings were not there to meet the listings. The district court looked at that decision and upheld it, looked specifically at the ALJ's analysis of the deficits and adaptive functioning. We already have one reasonable mind that upholds the ALJ's reasoning. Under substantial evidence, that's all the commissioner needs. There can be a disagreement, and clearly appellant disagrees on how the ALJ should have weighed the evidence. But the court should not accept the invitation to re-weigh that evidence and make a finding contrary to the ALJ and contrary to the district court. That's not the standard. The commissioner respectfully requests that the court affirm and uphold the district court's decision. Thank you, Mr. Neltner. Thank you. We'll now go back to Mr. Schnaufer for rebuttal. I dealt with most of the commissioner's attacks on the regulations in the reply brief, and also on this court's authority to err at Step 3 is dispositive. The commissioner said that Mr. Johnson conceded that he could do SBA. He never conceded it. Mr. Johnson had minimum work earnings over his entire lifetime. After he got out of high school, he earned at most $12,000 in a lifetime being a janitor for his father. That is not substantial gainful activity. The ALJ found that it was not substantial gainful activity. The commissioner said there's no medical opinion about deficits. That's simply wrong. I discussed the medical expert Dr. Brooks' testimony, the 1205C, number 4 statement. The commissioner did not dispute that that's actually a medical opinion that Mr. Johnson satisfies the first requirement. There are also two other opinions, and they are diagnoses, but the agency to the technical revisions said that those are what we use to determine whether or not a claimant has deficits and adaptive functioning. We can see here that when the regulations do not permit affirmance, the commissioner then starts attacking the regulation as being too lenient. The agency prospectively eliminated listing 1205C to make it harder for people like Mr. Johnson to get benefits. Mr. Johnson is entitled to benefits under listing 1205C in effect when the ALJ rendered his decision. The fact that the agency prospectively eliminated that should not authorize this court or encourage this court to reach an incorrect result in this case. Mr. Johnson, overwhelming evidence, shows that he met listing 1205C on this record. Thank you. Thank you, Mr. Schnaufer. Thank you, Mr. Knowlton. The case will be taken under advisement.